STATE of Minnesota, Respondent,

v.

Barbara Lynn POLSFUSS,
Appellant (A05–2108),

Allen Ferrozzo, Appellant (A05–2563).

Nos. A05–2108, A05–2563.

Court of Appeals of Minnesota.

Aug. 8, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Barry A. Sullivan, William G. Hawkins & Associates, Anoka, MN; and Alina Schwartz, Elliott B. Knetsch, Campbell Knutson, P.A., Eagan, MN, for respondent.

Richard P. Ohlenberg, Otten & Associates, Burnsville, MN, for appellant Polsfuss.

Richard L. Swanson, Chaska, MN, for appellant Ferrozzo.

Considered and decided by WORKE, Presiding Judge; KALITOWSKI, Judge; and HUDSON, Judge.

## OPINION

WORKE, Judge.

In these consolidated appeals from convictions of DWI, appellants argue that chemical tests should have been suppressed because they were taken under an implied consent law that had been declared unconstitutional in *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340 (Minn.2005), because it did not provide for prompt judicial review. Appellants also argue that decisions in the accompanying implied-consent proceedings, either rescinding the revocation of or reinstating the driver's license, should have collateral-estoppel effect in criminal proceedings, or should at least be given effect, based on public-policy considerations, in the criminal proceedings. Because the portion of the implied-consent law that was declared unconstitutional does not have any affect on the collecting of evidence, we affirm.

## FACTS

### *Appellant Barbara Lynn Polsfuss*

On October 9, 2004, a police officer stopped a vehicle driven by appellant Barbara Lynn Polsfuss because she was speeding. Appellant's eyes were bloodshot, watery, and glassy; she smelled strongly of an alcoholic beverage; and her speech was slow and slurred. Appellant failed several field sobriety tests and a preliminary breath test. Appellant also admitted that she had had a couple of glasses of wine. The results of a blood test revealed that appellant's alcohol concentration was .13. Appellant was charged with fourth-degree DWI in violation of Minn.Stat. § 169A.27 (2004) and Minn. Stat. § 169A.20, subd. 1(5) (2004).

On July 18, 2005, appellant's driver's-license revocation was rescinded based on the holding in *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340 (Minn.2005). Appellant then moved to suppress the test result and any evidence obtained after the test result was requested based on the fact that her driver's-license revocation was rescinded. Appellant argued that because she did not have an implied-consent hearing within 60 days, the test results should be suppressed in the criminal proceeding. The district court denied appellant's motion and the parties agreed to proceed with a stipulated-facts proceeding under *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980). On October 10, 2005, the district court concluded that (1) collateral estoppel did not compel suppression of the blood test, (2) there was no basis for suppressing the blood test, (3) the 93–day delay from the time the implied-consent petition was filed to the hearing date did not affect the collection of evidence, and (4) the implied-consent procedure and the related criminal procedure were not inextricably linked so as to mandate suppression. The district

court found appellant guilty of misdemeanor DWI.

### Appellant Allen Ferrozzo

On September 11, 2004, a police officer received a report that an intoxicated male was leaving a restaurant in a black vehicle. The officer checked the vehicle's registration and drove to the registered owner's residence. The officer approached the vehicle after it entered the garage. While speaking with the driver, appellant Allen Ferrozzo, the officer detected the strong odor of an alcoholic beverage on appellant's breath and observed that his eyes were watery and glassy, and that his face was flushed. Appellant also admitted to consuming beer. Appellant failed field sobriety tests and a preliminary breath test. The officer read appellant the Minnesota Implied Consent Advisory and appellant took a breath test, which indicated an alcohol concentration of .262. Appellant was charged with third-degree DWI, in violation of Minn.Stat. § 169A.20, subd. 1(1), (5) (2004), and Minn.Stat. § 169A.26 (2004), and violation of restricted driver's license, in violation of Minn.Stat. § 171.09 (2004).

In September 2004, appellant moved to suppress the chemical test pending the outcome of *Fedziuk*. The district court ruled that appellant failed to show that his due-process rights had been violated and denied the motion. In September 2005, the parties agreed to submit the case to the district court on stipulated facts under *Lothenbach*. The district court found appellant guilty of third-degree DWI.

### ISSUE

Did the district courts err in not suppressing chemical-test results in criminal DWI proceedings when the 2003 amendments to the implied-consent law that removed the *requirement for prompt judicial* review of a prehearing revocation was rendered unconstitutional?

### ANALYSIS

Appellants argue that the district courts erred in not suppressing chemical-test results because the tests were "obtained by implementation of an unconstitutional statute." Appellants rely on *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340 (Minn.2005), to support their contention that the implied-consent law, which was rendered unconstitutional because of due-process violations, should have the effect of suppressing chemical-test results in criminal DWI proceedings. "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

In *Fedziuk*, the supreme court had to determine whether the 2003 amendments to Minnesota's implied-consent law violated due process. *Fedziuk*, 696 N.W.2d at 344. Prior to the 2003 amendments, the provision regarding judicial review of a prehearing revocation in the implied-consent law stated that "[t]he hearing must be held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." Minn.Stat. § 169A.53, subd. 3(a) (2002). The 2003 amendments deleted the timeframe requirement in which to hold a hearing. *Fedziuk*, 696 N.W.2d at 346. The supreme court held that the implied-consent law as amended was unconstitutional as violating due process because it removed the requirement for prompt judicial review of a prehearing revocation. *Id.* at 342. The court severed the unconstitutional provision and revived the version of the implied-consent law that existed immediately prior to the 2003 amendments. *Id.* at 349.

■ Appellants' reliance on *Fedziuk* to support their argument that the test results should be suppressed in a criminal proceeding because the tests were "obtained by implementation of an unconstitutional statute" is misplaced. First, the implied-consent law was not declared unconstitutional in its entirety in *Fedziuk.* Only the 2003 removal of the requirement for prompt judicial review of a prehearing revocation from the statute was rendered unconstitutional. *Id.* at 342. The supreme court revived the version of the implied-consent law that existed immediately prior to the 2003 amendments. *Id.* Second, the due-process guarantees in a civil implied-consent proceeding are different from the due-process guarantees in a criminal proceeding. A driver's license is an important property interest and is subject to due-process protections. *Kleven v. Comm'r of Pub. Safety,* 399 N.W.2d 153, 156 (Minn.App.1987). In this context, due process requires a hearing before a person may be deprived of a driver's license. *Heddan v. Dirkswager,* 336 N.W.2d 54, 59 (Minn.1983). This requirement is satisfied by "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* In the criminal context, due process mandates that criminal defendants be treated with fundamental fairness. *State v. Richards,* 495 N.W.2d 187, 191 (Minn. 1992). It is a violation of fundamental fairness when a breath test is obtained through coercion. *State v. Stumpf,* 481 N.W.2d 887, 889–90 (Minn.App.1992). Appellants have not shown that they were coerced into submitting to the chemical tests and have not shown how their due-process rights have been violated.

Appellants next argue that their due-process challenge should be analyzed in accordance with several cases that suppressed test results in criminal proceedings because the drivers' due-process rights were violated by misleading language in the implied-consent advisory. This line of cases began with *McDonnell v. Comm'r of Pub. Safety,* 473 N.W.2d 848 (Minn.1991). In *McDonnell,* the supreme court held that the part of the implied-consent advisory that warned of possible criminal penalties violated the due-process rights of first-time offenders who could not be charged with criminal refusal. *McDonnell,* 473 N.W.2d at 855; *see also State v. Wilkens,* 492 N.W.2d 275, 277 (Minn.App. 1992) (stating that a due-process claim identical with that in *McDonnell* was raised because the appellant was a first-time DWI offender who consented to a test after he was read the improper implied-consent advisory). The following year, the court in *Stumpf* held that "an intoxilyzer test obtained through misleading language in the implied consent advisory ... is a violation of due process." *Stumpf,* 481 N.W.2d at 889–90. Appellants' reliance on this line of cases is also misplaced. In these cases, the advisory read to the drivers was *misleading.* Here, the advisory did not mislead appellants into involuntarily consenting to taking a chemical test. The constitutional violation identified in *Fedziuk* related only to review proceedings that would occur only long after the advisory was given and the driver had made his decision.

Appellants also argue that the doctrine of collateral estoppel should preclude the use of the test results in criminal proceedings. But that is not the case because Minn.Stat. 169A.53, subd. 3(g) (2004), states that "[t]he civil hearing under this section shall not give rise to an estoppel on any issues arising from the same set of circumstances in any criminal prosecution." Appellants argue, however, that the civil and criminal proceedings are so intermingled that it is against public policy to use the test results in a criminal proceeding after a driver prevails in an implied-

consent proceeding. But appellants could have been convicted of DWI without the prompt and parallel judicial review required by the pre–2003 implied-consent law. Thus, public-policy considerations do not lead to the conclusion that because a driver is permitted to retain his or her driving privileges a chemical test should not be used in a criminal DWI proceeding.

Finally, appellants suggest that this court should decide that Minn.Stat. 169A.53, subd. 3(g) is unconstitutional as a violation of the doctrine of separation of powers. This argument was not raised in the district court; and therefore, we will not consider the argument now. *See State v. Sorenson,* 441 N.W.2d 455, 457 (Minn. 1989) (stating that this court generally will not consider issues raised for the first time on appeal). And this court recently upheld the constitutionality of Minn.Stat. § 169A.53, subd. 3(g), against an identical constitutional challenge. *See State v. Lemmer,* 716 N.W.2d 657 (2006).

## DECISION

Because the portion of the implied-consent law that was declared unconstitutional by *Fedziuk* regarding judicial review for a license revocation does not have any effect on the evidence obtained for a related criminal DWI proceeding, the district courts did not err in denying appellants' motions to suppress the results of their chemical tests.

**Affirmed.**