*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1159**

State of Minnesota,
Respondent,

vs.

James Robert Stepke,
Appellant.

**Filed April 11, 2016
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62SU-CR-14-1609

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Robb L. Olson, Heather Ann Monnens, Luke McClure (certified student attorney), GDO Law, PLLC, White Bear Lake, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Suzula R. Bidon, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of second-degree test refusal, asserting several constitutional challenges to Minnesota's test-refusal statute. We affirm.

**FACTS**

On May 9, 2014, at approximately 11:30 p.m., White Bear Lake Police Officer Eric Gadbois was dispatched to a McDonald's restaurant to investigate a report that a driver was asleep behind the wheel of a vehicle in the drive-thru. When Officer Gadbois made contact with the driver, appellant James Robert Stepke, Officer Gadbois observed that his breath smelled like alcohol, his eyes were bloodshot and watery, and his speech was slightly slurred. Stepke performed field sobriety tests, and Officer Gadbois noticed multiple signs of impairment. After Stepke refused to provide a preliminary breath test, Officer Gadbois arrested Stepke for driving while impaired and transported him to the White Bear Lake Police Department.

Officer Gadbois read Stepke Minnesota's implied-consent advisory, which explained that Minnesota law required him to submit to a test, that test refusal is a crime, and that he had the right to speak with an attorney before deciding whether to take a test. Stepke stated that he understood his rights and asked to speak with an attorney. After Stepke spoke with an attorney over the telephone for several minutes, Officer Gadbois asked him if he would submit to a breath test. Stepke replied: "Officer I will take a breath test with a warrant." Officer Gadbois told Stepke that he did not need a warrant and was not getting a warrant. He asked Stepke two more times if he would take a breath test. Each

2

time, Stepke answered that he would take a breath test "with a warrant." Officer Gadbois asked Stepke if he would take a blood or urine test. Stepke responded, "Yes, with a warrant." Officer Gadbois concluded that Stepke refused to submit to chemical testing.

Respondent State of Minnesota charged Stepke with second-degree refusal to submit to a chemical test. The complaint alleged that Stepke refused a breath test and refused to provide a blood or urine sample. Stepke moved to dismiss the charge, arguing that "criminalizing the right to test refusal is a violation of [his] substantive due process rights." The district court denied Stepke's motion. Stepke stipulated to the state's case under Minnesota Rule of Criminal Procedure 26.01, subdivision 4, to obtain appellate review of the district court's order denying his motion to dismiss. The district court concluded that Stepke's "expressed agreement to submit to breath, blood, or urine testing only if Officer Gadbois first obtained a warrant constituted a refusal to submit to testing." The district court found Stepke guilty, sentenced him to serve 180 days in jail, stayed execution of the sentence for two years, and placed him on probation. Stepke appeals.

## D E C I S I O N

### I.

Under Minnesota's test-refusal statute, "[i]t is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine" after the person has been lawfully arrested for driving while impaired and an officer has read the implied-consent advisory. Minn. Stat. §§ 169A.20, subd. 2, .51, subds. 1-2 (2012). Stepke contends that the "test refusal law is unconstitutional as applied in this case." "The constitutionality of

3

a statute is a question of law that we review de novo."[1]  *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013) (quotation omitted).

Three cases inform our analysis.  First, in *State v. Bernard*, the supreme court held that the test-refusal statute does not violate substantive due process as applied to a request for a breath sample.  859 N.W.2d 762, 774 (Minn. 2015), *cert. granted*, 136 S. Ct. 615 (2015).  The supreme court reasoned that no fundamental right was at issue because the requested breath test was constitutional given that "a warrantless breath test . . . would not have violated the Fourth Amendment because it is a search incident to [a] valid arrest."  *Id.* at 767, 773.  The supreme court concluded that "criminalizing the refusal to submit to a breath test[.] . . . is a reasonable means to a permissive object and that it passes rational basis review."  *Id.* at 774.

Second, in *State v. Trahan*, this court held that the test-refusal statute violated substantive due process as applied to a request for a warrantless blood draw by "criminalizing [the] refusal of an unconstitutional search."  870 N.W.2d 396, 405 (Minn. App. 2015), *review granted* (Minn. Nov. 25, 2015).  This court reasoned that the warrantless blood draw would have been unconstitutional because a blood test is too intrusive to fall under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement and "no exigency would have prevented police from seeking a warrant before conducting a blood test."  *Id.* at 402-03.

---

[1] Because our review is de novo, we do not address Stepke's arguments specifically assigning error to the district court's legal analysis.

4

And third, in *State v. Thompson*, this court similarly held that the test-refusal statute violated substantive due process as applied to a request for a warrantless urine sample by "criminalizing [the] refusal to submit to [the] warrantless . . . urine test." ___ N.W.2d ___, ___ No. A15-0076, slip op. at 12 (Minn. App. Dec. 28, 2015), *review granted* (Minn. Feb. 24, 2016). This court reasoned that "[b]ecause a warrantless search of [appellant's] urine would invade one of the most private of human activities, it would not have been constitutional under the search-incident-to-arrest exception to the warrant requirement." *Id*. at 9 (citation omitted). In both *Trahan* and *Thompson*, this court reasoned that the refusal statute does not survive strict-scrutiny review because there are alternatives to the collection of warrantless blood and urine samples, including asking for a warrantless breath sample and charging refusal on that basis. *Thompson*, slip op. at 11; *Trahan*, 870 N.W.2d at 404.

In sum, a test-refusal charge does not violate substantive due process if the defendant refused a warrantless request for a breath sample. But such a charge violates substantive due process if the defendant refused a warrantless request for a blood or urine sample.

Stepke relies on *Trahan* and *Thompson*, but in this case, the police requested breath, blood, and urine samples from Stepke for chemical testing. Stepke refused all three forms of testing. In finding Stepke guilty, the district court concluded: "His expressed agreement to submit to breath, blood *or* urine testing only if Officer Gadbois first obtained a warrant constituted a refusal to submit to testing." (Emphasis added.) Thus, Stepke's test-refusal conviction is based on three separate acts: refusing to provide a breath sample, refusing to

5

provide a blood sample, and refusing to provide a urine sample. Any one of those acts is sufficient to sustain a conviction under section 169A.20, subdivision 2, which criminalizes the refusal "to submit to a chemical test of . . . blood, breath, or urine." Moreover, Stepke's criminal refusal was complete once he refused the breath test. Because Stepke refused a breath test, application of the test-refusal statute does not violate substantive due process in this case. *See Bernard*, 859 N.W.2d at 774.

Stepke's brief asserts that Officer Gadbois "erroneously told [him] that he did not need a warrant to require a blood or urine test in a criminal DWI investigation." At oral argument, Stepke argued that the officer's now-erroneous statement results in a due-process violation, relying on *McDonnell v. Comm'r of Pub. Safety* and *Steinolfson v. Comm'r of Pub. Safety*. 473 N.W.2d 848, 855 (Minn. 1991) (holding that "[b]ecause [Minn. Stat. § 169.123, subd. 2(b)(2) (1990) and that portion of the implied-consent advisory that is based on it] permitted police to threaten criminal charges the state was not authorized to impose, thereby violating the constitutional guarantee of due process, [they] are unconstitutional as applied to appellant"); 478 N.W.2d 808, 808 (Minn. App. 1991) (holding that "[a] driver's due process rights were violated . . . when he was incorrectly advised that if he refused testing he may be subject to criminal penalties").

But Stepke's brief does not cite or discuss those cases—or any other due-process caselaw—as support for his assertion of error. Instead, he cites Fourth Amendment caselaw. Appellate courts may decline to consider issues that were not fully developed in an appellant's brief when it is possible that appellant's failure to argue it thoroughly may inhibit the respondent's ability to argue the issue. *State v. Myhre*, ___, N.W.2d ___, ___,

2016 WL 626048, at *6 (Minn. Feb. 17, 2016). Because Stepke failed to adequately brief his assertion that Officer Gadbois violated his right to due process by stating that the officer did not need a warrant to collect blood or urine samples, we do not address this issue any further, except to note that Stepke does not assert that the officer misspoke when he stated that he did not need a warrant to request a breath sample. *See Bernard*, 859 N.W.2d at 767.

**II.**

Stepke also argues that the "test refusal law is unconstitutional on its face because it criminalizes the exercise of the Fifth Amendment right to due process of law, including the right to remain silent and the protection against compelled self-incrimination, and the Sixth Amendment right to the presence of an attorney during custodial interrogation and any 'critical stage' of the criminal proceedings." The state argues that we should not consider these arguments because Stepke did not adequately raise them in district court. Generally, an appellate court will not consider matters not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).

In district court, Stepke filed a boilerplate motion to dismiss, asserting that his right to substantive due process was violated, that he "was denied his right to counsel under both the [Fifth] and [Sixth] Amendments of the United States Constitution and under the Minnesota Constitution," and that the police obtained evidence and statements "in violation of [his] [Fifth] and [Fourteenth] Amendment rights against self-incrimination and right to remain silent." But at a hearing on the motion, Stepke's attorney narrowed the issues to whether there was probable cause to proceed to trial and "whether the criminal DWI test refusal law is constitutional." Later, Stepke filed a memorandum of law in support of his

7

motion, explaining that he challenged "(1) whether criminalizing the right to test refusal is a violation of Stepke's substantive due process rights; and (2) whether there is probable cause to charge Stepke [with] refusal . . . ."

In sum, Stepke did not make any Fifth or Sixth Amendment arguments at the motion hearing or in his memorandum. Thus, the district court's order denying Stepke's motion to dismiss did not address any Fifth or Sixth Amendment claim. Moreover, although Stepke argues that "law enforcement violated [his] Sixth Amendment right to refuse to answer questions without the presence of counsel," he fails to acknowledge supreme court caselaw holding that a person under suspicion of driving while impaired has only a "limited right to counsel within a reasonable time before submitting to testing," which is "*considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel.*" *State v. White*, 504 N.W.2d 211, 213 (Minn. 1993) (quotations omitted).

And although Stepke argues that the test-refusal statute violates the Fifth Amendment, he does not address supreme court caselaw holding that

> where an individual is requested to submit to blood alcohol content testing and potentially faces criminal penalties for refusing to do so, and where that individual is provided a reasonable opportunity to consult an attorney before deciding whether to submit as requested—neither the state nor the federal privilege against compelled self-incrimination is violated.

*McDonnell*, 473 N.W.2d at 856.

We once again note that an appellate court may "decline[] to address issues that were raised in a brief to [the appellate] court, but were not adequately argued or explained."

*Myhre*, 2016 WL 626048, at \*6. An appellant must preserve issues for review and adequately brief those issues on appeal. Failure to do so will likely result in an appellate court's refusal to consider the issues. *See id.* Because Stepke's Fifth and Sixth Amendment claims were not argued to, or considered by, the district court, and because the claims are not adequately argued or explained on appeal, we do not address them any further.

**Affirmed.**